UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIMI PEREZ-FALCON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SYNAGRO WEST, LLC; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendant. | ) Case No.: 1:11-cv-01645 - AWI - JLT<br>)<br>) ORDER DENYING PLAINTIFF'S MOTION TO<br>) REOPEN DISCOVERY AND DENYING LEAVE<br>) TO FILE AN AMENDED COMPLAINT<br>)<br>) (Doc. 29)<br>)<br>)<br>)<br>) |

　　　　Mimi Perez-Falcon ("Plaintiff") seeks to amend the scheduling order to reopen discovery and file an amended complaint. (Doc. 29). Synagro West, LLC ("Defendant" or "Synagro West") opposes the motion. (Doc. 32). On March 25, 2013, the Court heard the arguments of counsel on the motion. For the reasons set forth below, Plaintiff's motion to amend the scheduling order is **DENIED**.

**I.　　Relevant Procedural History**

　　　　Plaintiff initiated this action by filing a complaint against Defendant on September 27, 2011. (Doc. 1). Plaintiff alleges her employment with Defendant was wrongfully terminated because she complained about sexual harassment. *Id.* at 3. Accordingly, Plaintiff asserts Defendant is liable for wrongful termination in violation of the California Fair Employment and Housing Act and public policy related to retaliation for complaints. Further, Plaintiff asserts she was involved in "disputes with her supervisor concerning violations of defendant's permits relating to clean air standards and solid

1

waste disposal standards." *Id.* at 4.  Thus, Plaintiff contends she was also wrongfully terminated "in violation of public policy relating to complaints about solid waste disposal and violations of permits, statutes, and regulations." *Id.* (emphasis omitted).  Finally, Plaintiff asserts Defendant failed to pay her earnings through her termination date in a timely manner, in violation of Cal. Labor Code § 201.  *Id.* at 5.  Defendant filed its answer to the complaint on January 6, 2012.  (Doc. 14).

On February 29, 2012, the Court held a conference and issued its scheduling order setting forth the deadlines governing the proceeding.  (Doc. 17).  Specifically, the Court ordered "[a]ny motion or stipulation to amend a pleading SHALL be filed no later than **June 1, 2012**."  *Id.* at 2 (emphasis in original).  Also, the Court ordered discovery pertaining to non-experts be completed on or before December 17, 2012, and discovery related to experts be completed on or before February 8, 2013.  *Id.*

On February 22, 2013, Plaintiff filed the motion to amend now before the Court, seeking an order to reopen discovery (1) "to allow Plaintiff to name witnesses and discover matters relating to other employees who have been treated similarly to Plaintiff" [and] (2) allow discovery "relating to the relationship between the parent entity and subsidiaries including discovery relevant to punitive damages."  (Doc. 29 at 1).  In addition, Plaintiff seeks to "fil[e] an amended complaint in this matter adding the parent entity, Synagro Technologies, Inc.," because the "entity may have employed a policy of terminating employees who complain about illegalities and noncompliance with environmental regulations.  *Id.*

Defendant filed its opposition to the motion on March 11, 2013 (Doc. 32), to which Plaintiff filed a reply on March 18, 2013. (Doc. 35).

## II.   Scheduling Orders

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd

2

Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (*quoting Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

**III.    Discussion and Analysis**

The Scheduling Order set forth a pleading amendment deadline of June 1, 2012. (Doc. 17 at 2). The current motion was not filed until February 22, 2013. (Doc. 29) Thus, Plaintiff is required to demonstrate good cause under Rule 16 for filing an amended pleading out-of-time. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (explaining the question of whether the liberal amendment standard of Rule 15(a) or the good cause standard of Rule 16(b) apples to a motion for leave to amend a complaint depends on whether a deadline set in a Rule 16(b) scheduling order has expired). Likewise, Plaintiff must demonstrate good cause under Rule 16 to re-open discovery, as the deadline of December 17, 2012, has expired. *See Johnson*, 975 F.2d at 609. Accordingly, the Court

examines Plaintiff's diligence to determine whether amendment of the scheduling order is proper.

      A.    <u>Diligence in conducting discovery</u>

Plaintiff asserts her attorney "received a phone call from Anthony Chaney, a former Synagro employee from Philadelphia, Pennsylvania," after the discovery deadline passed in the case.[1] (Doc. 30 at 1). Discussing the case filed by Mr. Chaney in Pennsylvania, counsel learned "the same individuals were involved with both parties prior to [their] terminations." *Id.* at 3. Specifically, Plaintiff reports Mr. Chaney complained about compliance at the Philadelphia plant to Ann Marie Hoffmaster, and that Ms. Hoffmaster "was involved in Plaintiff's termination." *Id.* at 2. Also, Plaintiff asserts "Diana Floyd is involved in every termination at Synagro," including her own and the terminations of Mr. Chaney and his co-plaintiff, Christopher Kennedy. *Id.* at 3.

Because the Philadelphia Plant was operated by Philadelphia Biosolids, a subsidiary of Synagro Technologies, Inc., Plaintiff asserts "[t]his raises the issue of the potential for a company-wide policy of terminating employees who raise issues regarding compliance with the laws (or simply complain about anything)." (Doc. 30 at 2-3). Thus, Plaintiff requests that the Court re-open discovery on the following issues:

    1) the interrelationships between the entities involved with Synagro, including Plaintiff's former employer (current defendant Synagro West, LLC) and the employer for Anthony Chaney (and potentially others),

    2) this would include financial documents for punitive damages purposes as it now appears a company-wide policy may exist,

    3) complaints made by employees of other Synagro entities about compliance issues,[and]

    4) to discover whether adverse actions were suffered by said employees[.]

(Doc. 30 at 4).

In response, Defendant asserts Plaintiff was not diligent in pursuing discovery in the action, but "waited approximately six months (from when the Court issued its Scheduling Order, which began the discovery period) to serve her first set of written discovery on Defendant." (Doc. 32 at 3). Defendant observes, "Plaintiff waited to notice her first (and only) deposition nine months after the Court issued a Scheduling Order for December 17, 2012 (which was the last day allowed to complete discovery)." *Id.*

---

[1] Although Plaintiff's counsel was unsure of the date on which he received a call from Mr. Chaney, at the hearing he asserted the call was received "sometime in mid-January."

According to Defendant, "given that Plaintiff's complaint is based on employment retaliation/wrongful termination, she had to have known that determining whether the employer engaged in a pattern and practice of the alleged retaliation/wrongful termination would be crucial to the preparation of her case regardless of the lawsuit in Philadelphia." *Id.* at 6-7.

The Court agrees the corporate structure of Synagro West was relevant to Plaintiff's claims from the beginning of the action, as was the corporate structure of Synagro Technologies. Plaintiff could have pursued discovery regarding Defendant's corporate structure and its parent company during the nine months of discovery between the entry of the Scheduling Order and the close of discovery. Plaintiff's counsel, Mr. Rumph, acknowledged at the hearing that he could have requested information the relationship between Synagro West and its parent company, Synagro Technologies, Inc., but asserted he was not interested in such discovery because Defendant had admitted to employing Plaintiff. In taking this position, apparently, Plaintiff was interested in imposing liability on *an* employer rather than *all* employers. Moreover, counsel believed the evidence was so strong in favor of Plaintiff's claims that most discovery was unneeded. However, since receiving information regarding the similar claims asserted by Mr. Chaney and Mr. Kennedy, seemingly, Plaintiff now believes Synagro West and Synagro Technologies were joint employers of Plaintiff, and Synagro West is enforcing a policy promulgated by Synagro Technologies to terminate any employee who complains about compliance issues. (*See* Doc. 30 at 3).

The only discovery identified by Plaintiff regarding the corporate structure of Defendant came at the sole deposition, held on the last day of discovery. Plaintiff questioned Jackie Linton, the former Vice President of Human Resources, "about the various entities of Synagro during her deposition" but asserts Ms. Linton failed to provide a "real answer to the issue of the interrelationship between these entities." (Doc. 30 at 3; *see also* Doc. 30-4 at 4-5). Ms. Linton testified she was not familiar with the divisions within Synagro, but that "[t]here were lots of different companies that were part of the Synagro Corporation." *Id.* at 4. In addition, Ms. Linton reported "all" employee personnel files were maintained in Houston, where she worked. *Id.* at 5. Now dissatisfied with this information, Plaintiff seeks further discovery regarding Synagro's entities. Importantly, this limited discovery is inconsistent with a finding of "diligence." Because Plaintiff waited until the eleventh hour to conduct a deposition,

she bore the risk that new information would be discovered on the last day of the discovery period, and that she would be unable to pursue follow-up.

Indeed, the fact that Synagro West was a subsidiary of Synagro Technologies was not a fact that was unknown to Plaintiff. At the hearing, counsel admitted knowing of the parent company but insisted this fact had no pertinence in light of the fact Synagro West admitted to being Plaintiff's employer. However, the fact that Plaintiff made a tactical decision to forego discovery as to the interrelationship between these entities—and, indeed, the opportunity to inquire of Synagro West as to the source of the human resources policies and customs—is a fact not lost on the Court.

On the other hand, it is not clear whether the claims of Mr. Chaney and Mr. Kennedy could have been discovered by Plaintiff prior to the close of discovery. Counsel has explained that their claims did not arise until summer 2012 and their complaint was not filed until November 2012. Nevertheless, information regarding the interrelationships between the entities involved with Synagro," the source of Synagro West's human resources policies and customs and "financial documents for punitive damages" was clearly discoverable prior to any knowledge about the case initiated by Mr. Chaney and Mr. Kennedy.

Moreover, despite Plaintiff's current position that "Evidence of how others are treated is significant and is admissible," discovery of the Chaney/Kennedy lawsuit does not make this evidence pertinent; it was *always* pertinent. Heyne v. Caruso, 69 F.3d 1475, 1479-1481 (9th Cir. 1995)(" It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group.") Nevertheless, Plaintiff failed to seek discovery of any others who suffered similarly to her as a result of Synagro West's actions. Why, exactly, this "me too" evidence is interesting to Plaintiff only now because she discovered Chaney/Kennedy have filed a lawsuit against Synagro Technologies—but this information was not interesting to Plaintiff is if concerned Synagro West's direct employees, is not explained to the Court's satisfaction.

Because Plaintiff fails to show she acted with diligence in pursuing discovery in the time permitted under the Court's Scheduling order, the request to re-open discovery is **DENIED**. *See*

*Jackson*, 186 F.R.D. at 607.

### B. Leave to amend the Complaint

Even if the Court were to conclude Plaintiff demonstrated diligence in the course of discovery, Plaintiff has failed to demonstrate amendment of the complaint is proper under Rule 15. Granting or denying leave to amend a complaint under Rule 15 is in the discretion of the Court, *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). There is no abuse of discretion "in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990).

Leave to amend should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citing *Yakima Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)). Consequently, under Rule 15(a), there are several factors a court may consider in deciding whether to grant leave to amend a complaint: (1) whether the plaintiff has previously amended his compliant, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); L*oehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight; prejudice to the opposing party has long been held to be the most crucial factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

### 1. Prior amendments

The Court's discretion to deny an amendment is "particularly broad" where a plaintiff has previously amended his complaint. *Allen*, 911 F.2d at 373; *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 79 F.3d 1432, 1438 (9th Cir. 1986). Here, Plaintiff has not amended her complaint previously. Accordingly, this factor does not weigh against amendment.

### 2.    Undue delay

By itself, undue delay may be insufficient to prevent the Court from granting leave to amend pleadings. *Howey*, 482 F.2d at 1191; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1986). However, in combination with other factors, delay may be sufficient to deny amendment. *Hurn v. Ret. Fund Trust of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981). Evaluating undue delay, the Court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388; *see also Eminence Capital*, 316 F.3d at 1052. In addition, the Court should examine whether "permitting an amendment would . . . produce an undue delay in the litigation." *Id.* at 1387.

Here, Plaintiff admitted having knowledge of a parent entity, but made a tactical decision not to conduct discovery related to the relationship between Synagro West and the parent entity and became interested in this information only after learning of the case filed by Mr. Chaney in Pennsylvania. In addition, filing the amended complaint identifying Synagro Technologies as a defendant would require the entire case to be rescheduled. Undoubtedly, re-opening discovery would cause significant delay in the action, indeed, likely by at least 9 to 12 from the date the case is rescheduled—which would not be for many months from now. *See, e.g., Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming the district court's denial of motion to amend pleadings where additional causes of action would require additional discovery, prejudicing defendant and delaying proceedings); *Solomon v. N. Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (holding the district court did not abuse its discretion in denying the plaintiff's motion to amend on grounds of undue delay and prejudice where the motion "would have required re-opening discovery, thus delaying the proceedings"). Consequently, this factor weighs against granting Plaintiff leave to file an amended complaint.

### 3.    Bad faith

There is no evidence that Plaintiff has acted in bad faith in seeking to amend the complaint to add Synagro Technologies as a defendant. Thus, this factor does not weigh against an amendment.

### 4.    Futility of amendment

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin*, 59 F.3d at 845; *see also Miller v. Rykoff-Sexton*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for

leave to amend may be denied if it appears to be futile or legally insufficient"). Frequently, futility means "it was not factually possible for [the] plaintiff to amend the complaint so as to satisfy the standing requirement." *Allen*, 911 F.2d at 373. Similarly, a motion for leave to amend is futile if it can be defeated on a motion for summary judgment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). In addition, futility may be found where new claims are duplicative of existing claims or patently frivolous, or both. *See Bonin*, 59 F.3d at 846.

In this case, it does not appear that amendment would be futile, because Plaintiff has identified evidence supporting her allegation that Synagro Technologies was an employer under the definition of Cal. Gov't Code § 12926. Accordingly, the Court cannot conclude Plaintiff's proposed amendment is futile, and this factor does not weigh against amendment

### 5. *Prejudice to the opposing party*

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital*, 316 F.3d at 1052 ("Prejudice is the touchstone of the inquiry under rule 15(a)") (internal quotes omitted). The burden of showing prejudice is on the party opposing an amendment to the complaint. *DCD Programs*, 833 F.2d at 187; *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Under Rule 15(a), there is a presumption in favor of granting leave to amend where prejudice is not shown. *Eminence Capital*, 316 F.3d at 1052.

Importantly, the re-opening discovery of related to Synagro Technologies would prejudice Defendant. *See, e.g., Zivkovic,* 302 F.3d at 1087 (observing "[t]he requirement of additional discovery would have prejudiced [the defendant]" if leave to amend a complaint was granted); *Lockheed Martin Corp. v. Network Solutions Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice"). In addition, as Defendant argues, "allowing Plaintiff to add a new party 18 months after initiation of the lawsuit and 6 months prior to trial would be highly prejudicial to Synagro Technologies, Inc." (Doc. 32 at 8-9) (citing *DCD Programs*, 833 F.2d at 187; *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1069 (6th Cir. 1995)). Given the prejudice to both Defendant and Synagro Technologies—

caused by the significant passage of time from the date of the underlying events--this factor weighs against granting Plaintiff leave to file an amended complaint.

## IV.     Conclusion

Here, Plaintiff has failed to demonstrate she diligently pursued discovery in the time allotted. This finding ends the Court's inquiry of whether to grant leave to amend the scheduling order, either to re-open discovery or file an amended complaint.  *See Johnson*, 975 F.2d at 609 (explaining "the inquiry should end" for a lack of diligence); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of motion to modify schedule where the plaintiff failed to "demonstrate diligence in complying with the dates set by the district court"). However, even if Plaintiff demonstrated good cause to amend the scheduling order, Plaintiff has failed to demonstrate an amendment is proper under Rule 15 given the undue delay and prejudice that would result.  Recently, this Court observed: "Federal Rule of Civil Procedure 15 is not so broad was to reward a party for undue delay in seeking discovery."  *Gerawan Farming, Inc. v. Rehrig Pac. Co.*, 2013 U.S. Dist. LEXIS 31835, at *20 (E.D. Cal. Mar. 7, 2013).

On the other hand, given the amount of time until trial, the Court will grant <u>Defendant</u> leave to take the depositions of Messrs. Chaney and Kennedy, if they choose.  Their choice to take these depositions is without prejudice to their later decision to move to exclude these witnesses at trial.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to reopen discovery and file an amended complaint (Doc. 29) is **DENIED**;

2. <u>Defendant</u> is **GRANTED** 60 days leave to take the depositions of Messrs. Chaney and Kennedy.

IT IS SO ORDERED.

Dated:   **March 26, 2013**              **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE